```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


    _____
                                         
    GEORGE ANDREW ROSS, et al.,          
                                          Civil No. 11-6490 (NLH/KMW)
              Plaintiffs,                

         v.                               OPINION


    BOARD OF EDUCATION GREATER
    EGG HARBOR REGIONAL HIGH
    SCHOOL DISTRICT, et al.,

              Defendants.
    _____
```

**APPEARANCES**

JERRY C. GOLDHAGEN
CENTRAL PARK EAST
222 NEW ROAD, SUITE 302
LINWOOD, NJ 08221
    On behalf of plaintiffs

TIMOTHY R. BIEG
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, NJ 08033-0389
    On behalf of defendants Greater Egg Harbor Regional High
School District, Michael Wilbraham, and Ernest Rockelman

JOHN J. BANNAN
REYNOLDS & HORN, P.C.
750 ROUTE 73 SOUTH
SUITE 202A
MARLTON, NJ 08053
    On behalf of defendants Galloway Township Police Department
and Kevin Jorgensen


**HILLMAN, District Judge**

    Presently before the Court is the motion of defendants

Greater Egg Harbor Regional High School District, Michael Wilbraham, and Ernest Rockelman, and the motion of defendants Galloway Township Police Department and Kevin Jorgensen for summary judgment in their favor on plaintiffs' claims arising out of an altercation between high school students.  For the reasons expressed below, defendants' motions will be granted.

## BACKGROUND

On March 30, 2009, plaintiff, George Andrew Ross II, was a sophomore at Absegami High School in Galloway Township, New Jersey.  At around 7:00 am that morning, defendant Donald Pilgrim, a senior at Absegami, confronted plaintiff in the high school's 200 hallway stairwell regarding plaintiff's then-girlfriend, Briana Forbey.[1]  According to plaintiff, Donald spoke

---

[1] Briana Forbey is named as a defendant in the action, but it is unclear whether she was ever served with the complaint when it was filed in state court in October 2011, or when it was removed to this Court in November 2011, as no one has entered an appearance on her behalf.  The Court will dismiss plaintiffs' claims against Ms. Forbey for not only lack of prosecution, but also because no evidence in the record supports any claim against her.  See F.R.C.P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period."); Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (holding that a "district court may on its own initiative enter an order dismissing the action provided that the complaint

2

"fighting words" to plaintiff because he wanted to "have" Briana.  Plaintiff indicated that he did not want to fight, but plaintiff and Donald began to argue, and they eventually started to tussle.  Defendant Earnest Rockelman, an Absegami teacher, heard the altercation from the upstairs hallway and came running down to break up the fight.  Rockelman yelled for another teacher in the hallway to alert the office, which she did by using her classroom's intercom system.  Rockelman managed to restrain Donald in a bear-hug posture until defendant Michael Wilbraham, one of the school's vice-principals, came from the office.

Before Wilbraham arrived, plaintiff, uninjured at that time, left the 200 hallway and proceeded to the 100 hallway,[2] where he encountered Donald's sisters, defendants Diamond and Dynasty Pilgrim.  The girls began to taunt plaintiff, and they followed plaintiff through the hallway as he walked back toward the 200 hallway where he had his first class.  The girls started

---

affords a sufficient basis for the court's action").
[2] Rockelman states that he told plaintiff to remain on the scene. Plaintiff states that Rockelman did not tell plaintiff to stay. Plaintiff's friend, Gilbert Langford, who arrived while plaintiff was walking away, stated that he felt it was odd that plaintiff was not told to stay there, because "[u]sually, . . . if a fight occurs at Absegami they take both students to the principal's office, do the work, and just suspend them straight there."  (Langford Dep. at 18.)

to throw punches at plaintiff, and then Donald, who had broken free from Vice-Principal Wilbraham's grip, came on the scene and blindsided plaintiff.  Donald hit plaintiff in the face and the three Pilgrim siblings kicked him while he was lying on the ground.  Plaintiff's friend, Gilbert Langford, who had been walking with plaintiff down the hall from the first incident, pulled Donald off plaintiff, and school staff members helped break up the fight.[3]  Plaintiff walked away and was escorted by a janitor to the school nurse.  Plaintiff's father picked up plaintiff from school and took him to the hospital.  Plaintiff suffered from a fractured eye socket, bumps and bruises to his face and body, and he received six stitches.

When the first altercation occurred, school resource police officer, defendant Kevin Jorgensen, a patrolman for the Galloway Police Department, received a radio call that there was a fight in the 200 hallway near the B corridor.  As soon as he arrived there, at the same time as Wilbraham, he witnessed Rockelman standing chest-to-chest with Donald, and then received a call about another altercation in the 100 hallway, which was presumably plaintiff's interaction with the Pilgrim sisters.

---

[3] It appears that Briana and another student, Derek, were also involved in the altercation, although the nature of their involvement is unclear.

4

Jorgensen immediately turned to go to the 100 hallway.  When he arrived to the scene of the second incident, it had already been broken up.  Just prior to Jorgensen coming to that part of the 100 hallway, Donald had broken free from Wilbraham, who had been escorting Donald down the 200 hallway to the office, and hit plaintiff who was returning to the 200 hallway along with the Pilgrim sisters.  Wilbraham, who yelled after Donald and started to run after him, came to the scene, which was breaking up, and took Donald to his office.

As a result of the altercations, the Pilgrim siblings were charged by Officer Jorgensen and the school, through Wilbraham, with aggravated assault and harassment.  They pleaded guilty and were ordered to pay plaintiff restitution.  The school, through Wilbraham, charged plaintiff with simple assault and disorderly conduct.  The school chose not to pursue those charges, and they were dismissed.[4]  Plaintiff, along with everyone else involved in the altercation, including the Pilgrim siblings, Gilbert,

---

[4] Following the filing of the charges against plaintiff, the Galloway Township Police Department mailed plaintiff's parents a letter informing them that the charges could be dealt with as a "station house adjustment," which is a volunteer program that would avoid the filing of a formal complaint with the superior court.  Plaintiff's parents did not respond.  Plaintiffs claim that they had to hire an attorney to appear in court, at which time the charges were dismissed.

5

Briana, and another student, Derek, were suspended from school. Plaintiff served 9 days of out-of-school suspension, and during that time he was not permitted to participate in any extracurricular activities, including not attending the prom.[5]

Plaintiff, through his parents, filed suit against Greater Egg Harbor Regional High School District, Wilbraham, Rockelman, the Galloway Township Police Department, and Jorgensen, as well as the three Pilgrim siblings and Briana Forbey, who have not appeared in the matter.  Plaintiffs have asserted numerous claims against the defendants alleging, in a nutshell, that defendants failed to properly protect him from the altercations, and defendants imposed unjustified charges and discipline on him.  The appearing defendants have all moved for summary judgment in their favor.  Plaintiffs have opposed their motions.

## DISCUSSION

**A.   Jurisdiction**

Defendants removed this action from New Jersey state court

---

[5] Plaintiff was a sophomore at the time of this incident, but his complaint alleges that he was not permitted to attend the senior prom.  His deposition testimony does not clear up the question of what prom he missed, and it is unclear whether missing the prom was a result of breaking up with his girlfriend or due to the school's "social suspension."  Nevertheless, the Court accepts plaintiff's claim that missing the prom as a part of his 9-day suspension was unjustified punishment.

to this Court pursuant to 28 U.S.C. § 1441.  This Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."

7

Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **C.**    **Analysis**

Plaintiffs allege an array of claims against defendants that sound in tort, contract, and quasi-contract theories of liability, along with general constitutional violation claims.  The two theories of liability to support all those claims appear to be (1) that the defendants failed to properly protect plaintiff from being injured by the Pilgrim siblings, and (2) that the defendants imposed unwarranted punishment and criminal

8

charges on plaintiff for his involvement in the altercations. The evidence in the record does not support either theory of liability.

With regard to a school's duty to protect students, a school "cannot be expected to shelter students from all instances of peer harassment." L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Educ., 915 A.2d 535, 550 (N.J. 2007). "Nevertheless, reasonable measures are required to protect our youth, a duty that schools are more than capable of performing." Id.  Educators are required to protect the "children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." Jerkins ex rel. Jerkins v. Anderson, 922 A.2d 1279, 1284 (N.J. 2007) (citations and quotations omitted).  Foreseeability of injury, as it affects the existence of a duty, refers to "the knowledge of the risk of injury to be apprehended."  Id. (citation omitted).

The ability to foresee harm, however, "does not in itself establish the existence of a duty."  Id.  Whether a duty exists is "one of fairness and policy that implicates many factors," including "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care,

9

and the public interest in the proposed solution." Id. (citations omitted). A "court must examine all of the attendant circumstances in light of those and other relevant considerations and must engage in a fact-based and principled analysis." Id. (citations omitted). The determination of foreseeability and whether a duty should be imposed is a matter of law decided by the court. Carvalho v. Toll Bros. and Developers, 675 A.2d 209, 212 (N.J. 1996).

The altercation between plaintiff and Donald was foreseeable in the sense, as Vice-Principal Wilbraham put it, that getting physical over a girlfriend situation "would describe half of any high school boy that gets into a fight." (Wilbraham Dep. at 36:14.) The specific incidents that happened on March 30, 2009, however, were not foreseeable to any of the defendants.

Plaintiff testified that he had no prior history with Donald or the Pilgrim siblings, except that Dynasty and Briana had some sort of incident, and Dynasty and plaintiff would sometimes "bust each other's balls." Donald, a senior, had amassed a several-page disciplinary record since his freshman year, but most of his transgressions were for being late or absent, and being disrespectful to teachers by not following

10

their directions.  During his senior year, up to the March 30, 2009 incident, the only discipline Donald received for any conduct physical in nature was a two-day in-school suspension in November 2008 for getting into a grabbing and pushing match with a female student.  With Donald not having any known propensity for physical violence against another student, and plaintiff not having any prior personal interaction with Donald, it was not foreseeable to the school staff or the school resource police officer that plaintiff and Donald would engage in any sort of physical altercation.  Without a foreseeable risk, it cannot be found that defendants breached any duty to plaintiff to specifically protect him from Donald.[6]

To the extent that plaintiff argues that the defendants failed in their duty to protect him after the first incident because it was foreseeable that Donald would go after plaintiff again, the circumstances of the events preclude the imposition of a duty on defendants to prevent the second encounter, or the

---

[6] At some point prior to the March 30, 2009 incident, plaintiff's father spoke to Wilbraham and the Galloway Police Department about how a number of students were getting into fights after school.  Plaintiff was not one of them, although he observed the incidents, and there is no indication that Donald was involved. That defendants were aware that high students were engaging in after school fisticuffs does not cause the altercation between plaintiff and Donald as it happened that day to be foreseeable to the defendants.

11

Case 1:11-cv-06490-NLH-KMW   Document 60   Filed 06/08/15   Page 12 of 18 PageID: 933

finding that they breached that duty if one were imposed on them.  Instead of remaining on the scene of the first altercation while Donald was restrained by Rockelman and they awaited Wilbraham's arrival, which is the typical scenario following a school fight, plaintiff left.  As a result, plaintiff encountered Donald's siblings, who apparently took up Donald's cause to "get" Briana from plaintiff.  In less than a minute, Donald broke free from the grasp of the vice-principal as he was escorting him to the office, and struck plaintiff.  The entire time between the end of the first altercation and the second was less than one minute, fifteen seconds, and transpired before the school resource police officer caught up from the first altercation to the next.  Plaintiff has not articulated a viable course of action that the defendants could have undertaken to prevent the second encounter.

As the New Jersey Supreme Court has noted, "schools are [not] guarantors of students' safety with respect to all activities during or after dismissal.  A school district's responsibility has temporal and physical limits . . . ."  Jerkins, 922 A.2d at 1291.  Even though it was unfortunate that plaintiff was injured in a fight that he did not start, the absence of any reasonable foreseeability of the altercation

12

between plaintiff and Donald precludes the imposition of liability on defendants for all claims arising out of defendants' alleged duty to protect plaintiff from the harm that befell him that day.

As for plaintiff's second theory of liability, that the defendants imposed unwarranted punishment and criminal charges on plaintiff for his involvement in the altercations, the facts do not support any claims based on that theory. Vice-Principal Wilbraham explained the school's discipline policy at the time and how it was told to the students at the beginning of the year:

> We let them know that they are not to be physically engaged in any way, shape or form. We let them know that it is really quite impossible when you're not there at the scene to determine exactly what leads to the spark of a physical event and it is the expectation of this high school that if somebody swings on you first, it is not your initial reaction to react and fight back, but to get yourself to an area that's safe, whether it be in a teacher's classroom, I don't care, any adult in the building, custodial, janitor, anybody. It is not the expectation that you start – just because somebody swung on you first, that you can now begin to go to town and engage further in fighting. . . . We expect the student [] to get themself (sic) out of a negative situation in advance. Certainly if you're arguing with another student in the hallway and it's getting heated, there's a certain point where, like even with adults, you expect somebody to be mature enough and walk away so it doesn't become a physical event. Often what we see in high school because of the maturity level is opposite.

(Wilbraham Dep. 123:12, 125:12.)

Plaintiff admits that instead of walking away from Donald when he first encountered him, plaintiff and Donald engaged in 10 minutes of arguing and pushing back and forth, and then three minutes of physical tussling. This incident alone violates the school's policy prohibiting physical contact with another student.

Once their fight was broken up by a teacher, plaintiff walked away. Regardless of whether plaintiff was instructed to stay there, or it was known to him that he should have done so, plaintiff became vulnerable to the Pilgrim siblings' additional assault. Even though plaintiff appears to be only the recipient of physical contact during the second incident, it is undisputed that the discipline policy applied equally to all students involved in an altercation, no matter what their level of involvement. Indeed, Gilbert, Briana, and Derek, who were not the main actors, also received nine day suspensions for their involvement in the second altercation.

Even though plaintiff and his parents feel that the discipline policy of the school was unfair as it was applied to him, the school had discretion to enforce its policies as it deemed appropriate under the circumstances. See N.J.S.A. 18A:25-2 (allowing a teacher or "other person in authority" to

14

"hold every pupil accountable for disorderly conduct in school and during recess and on the playgrounds of the school and on the way to and from school"); N.J.S.A. 18A:37-1 ("Pupils in the public schools shall comply with the rules established in pursuance of law for the government of such schools, pursue the prescribed course of study and submit to the authority of the teachers and others in authority over them."); N.J.S.A. 18A:37-4 (providing that the principal may suspend any pupil from school for good cause); Joye v. Hunterdon Cent. Regional High School Bd. of Educ., 826 A.2d 624, 641 (N.J. 2003) (citation omitted) (explaining that school officials have a duty to maintain order and discipline in the public schools, and are obligated to take reasonable precautions for the students' safety and well-being); G.D.M. v. Board of Education of the Ramapo Indian Hills Regional High School Dist., 48 A.3d 378, 389 (N.J. Super. App. Div. 2012) (explaining that N.J.S.A. 18A:37-2 provides for the punishment and suspension or expulsion from school of any pupil who is guilty of any of a non-exclusive list of offenses against school staff, fellow students, or school property).

Moreover, in the event a student or parent challenges a school's discipline decision, procedures exist to provide proper due process to advance that challenge. See N.J.A.C. 6A:16-7.2

(explaining the process of short-term suspensions and how to object to the imposition of such a sanction); L.K. and A.K. on Behalf Of Minor Child, L.K. V. Northern Burlington County Regional Board Of Education, OAL DKT. NO. EDU 6071-12, AGENCY DKT. NO. 92-4/12, 2014 WL 805303 (N.J. Admin. 2014) ("[U]nder New Jersey school law, when a school district suspends a student for more than ten (10) consecutive days, they are required to provide the student with formal due process procedures, including written notification to the parents of the charges and alleged facts and the opportunity for a formal hearing before the district board of education. N.J.A.C. 6A:16-7.3. By contrast, a short-term suspension is governed by the less formal procedures specified under N.J.A.C. 6A:16-7.2.").

In the same vein, in order for plaintiff's challenge to the school signing a criminal complaint against plaintiff for simple assault to be successful, he must demonstrate that the school was motivated by malice and without proper cause.  See LoBiondo v. Schwartz, 970 A.2d 1007, 1022 (N.J. 2009) (explaining that a claim for malicious prosecution or abuse of process requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of

16

probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff.).[7]  Plaintiff has not done so.

All of plaintiffs' claims hinge on showing that the school failed to protect plaintiff, and that he was punished unjustifiably.  The undisputed facts in the record do not support either theory.  It was not foreseeable to the defendants that an altercation would occur between Donald, his sisters, and plaintiff on that day, and the specific circumstances of the two encounters do not suggest that defendants could have prevented them.  The discipline imposed on plaintiff by the school was within its discretion, followed school policy as it had been explained to the students, did not amount to an abuse of process, and any challenge to the discipline should have been made through the proper administrative procedures.  With these findings, plaintiffs cannot support any of their claims.

---

[7] It appears that in addition to an abuse of process claim, plaintiff has advanced a claim for defamation based on the criminal complaint. The facts do not support such a claim. <u>See DeAngelis v. Hill</u>, 847 A.2d 1261, 1267-68 (N.J. 2004) ("[T]he elements of a defamation  claim are: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.").

**CONCLUSION**

For the reasons expressed above, defendants' motions shall be granted, and judgment entered in defendants' favor.

As the case stands now, similar to the claims against Briana Forbey, dismissed above, see supra note 1, plaintiffs' claims against Donald, Dynasty, and Diamond Pilgrim remain outstanding. It is not clear whether they were ever served with the complaint when it was filed in state court in October 2011, or when it was removed to this Court in November 2011, as no one has entered an appearance on their behalf. Either plaintiffs have abandoned those claims by not serving the Pilgrims, or, if service had been effectuated, plaintiffs have failed to prosecute their claims against them. Accordingly, the Court will dismiss plaintiffs' claims against the Pilgrim defendants without prejudice. An appropriate Order will be entered.

Date: June 8, 2015                    s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.